THE GERMAN NATIONAL BANK OF DENVER v. THE NATIONAL STATE BANK OF BOULDER.

1. NAMES—INITIALS—PROCESS—GARNISHMENT.
The full name and proper initials of the defendant are necessary in a garnishment proceeding. A writ of attachment and notice of garnishment against W. J. M. will not impound a debt due W. G. M., unless the proof shows that the garnishee had actual knowledge of the identity of the debtor and the person named in the process.
2. APPELLATE PRACTICE.
When there is no evidence to support the verdict, the judgment entered thereon will be reversed.

*Appeal from the District Court of Boulder County.*

Messrs. HARTZELL & PATTERSON, for appellant.

Mr. R. H. WHITELEY, for appellee.

REED, J., delivered the opinion of the court.

This case was before this court on a previous occasion. See 3 Colo. App. 17.

In 1890, W. G. Motley was indebted to appellee on a promissory note, which became due in December of that year. In January, 1891, the bank brought suit upon the note, and sued out an attachment against W. J. Motley. Appellant was served with process of garnishment, with notice to answer indebtedness to W. J. Motley. The cashier of the bank answered, denying any indebtedness to W. J. Motley. The answer was traversed by appellee; a trial had, resulting in a judgment against appellant. An appeal was prosecuted to this court; the judgment reversed, and cause sent back for retrial. The trial occurred April, 1893, again resulting in a verdict and judgment against appellant for the sum of $798.21 and costs, from which this appeal is prosecuted.

By reference to the former opinion, it will be seen that this court held that the full name or proper initial letters were necessary in a proceeding of that kind, and that a writ of attachment and notice of garnishment against W. J. Motley would not reach moneys due W. G. Motley. At the time of the service of notice upon appellant, it had funds of W. G. Motley in its possession, which it subsequently paid out in full upon checks.

We are perfectly satisfied with the former opinion, on the case then made, and affirm it. In the intricate and complicated business of banking, absolute exactness and particularity in regard to names is absolutely indispensable, not only for the security of the bank, but of those doing business with it. In many instances there are many of the same surname, and frequently with the same first initial letter, and where the full name is not used, it frequently occurs that the second or

intermediate initial is all that distinguishes one name from another, and a bank disregarding the middle initial as a part of the name would be very likely to find itself in trouble by allowing one man to draw upon the account of another. If such trouble occurred, no bank could shield itself from responsibility by ignoring the only distinctive difference between the names of two persons. When banks are necessarily held to such strict accountability, it is not asking too much that in proceedings against them the individual sought to be reached should be so designated as to leave no doubt in regard to the identity. Banks cannot presume that John A. Smith and John W. Smith are the same person. Creditors are supposed to know the names of their debtors, especially when, as in this case, the indebtedness is evidenced by a promissory note, and in bringing suit should be held to bring the suit against the proper person, or suffer the penalty of their own negligence. Where a person opens a bank account under a fictitious name, and the process is sued out in the real name, the identity should be established to the officers of the bank when it is sought to reach the fund. There is no doubt but that if actual knowledge of the identity was brought home to the knowledge of bank officials the bank would be held chargeable.

In the former opinion of this court, the learned judge who wrote it carefully guarded against any misconception, and said: " There was no showing in the present case that the bank had any knowledge whatever that their depositor was the one sought to be reached by the process at the time they paid out the money on his checks. Confining the decision to this particular class of cases, it is held that a garnishee is totally unaffected by any notice which may be served upon him, unless it properly runs with an accurate description against the individual to whom he may be indebted, *unless it be in those cases where the proof may show that the garnishee had actual knowledge of the identity of the debtor and the person named in the process.*"

Upon the retrial of this case there was practically but one question to be determined,—the question of knowledge and

good faith upon the part of appellant. That the process ran in the name of W. J. Motley was conceded. It was also conceded that it was an error, and that the true name was W. G. Motley. In the former opinion in this case the answer of the garnishee that the bank was not indebted to W. J. Motley was legally and technically correct. Consequently what remained was a question of *bona fides*,—strictly a question of morals. By the former opinion that was made an element, a factor; but the language of the court was: "Unless it be in those cases *where the proof may show that the garnishee had actual knowledge of the identity of the debtor and the person named in the process.*"

To recover, the proof must have established the actual knowledge. A careful examination of the evidence shows that it came far short of the requirement. Mr. Nicholson, the cashier of appellee, and Mr. Temple were the witnesses by whom it was sought to make proof of knowledge. Some days after appellant's answer was filed to the process of garnishment, they had an interview with Mr. Clinton, cashier of appellant, and the knowledge was attempted to be shown by admissions of Clinton. Neither could give the language used. One got the "impression" that he admitted he did know who was meant. The other, Temple, said: "I understand that he admitted that he knew who was *intended, because there was not a word in his conversation to the contrary.*" No actual knowledge on the part of the cashier was shown or attempted. The supposed admissions attempted to be established were some days subsequent to the transaction, and were, if of any value, only what he *then* knew or thought, but not of knowledge at the time of the transaction. The evidence even of such supposed admissions was vague and indefinite, apparently the result of inference or presumption, and not based upon any thing said by Clinton, who testified: "I had no knowledge as to who was meant." In reference to the conversation, Mr. Clinton said: "I did not in that conversation say, either directly or in substance or effect, that I

knew who was meant by the garnishee writ. It was not true."

The verdict of the jury was unwarranted by the evidence. There was no evidence upon which it could be based; was evidently the result of prejudice, or based upon presumptions from the facts; was not in obedience to the instructions of the court, which were: 1st. If the jury believe from the evidence that the garnishee bank, through its cashier, Clinton, knew that its depositor W. G. Motley was the one sought to be reached by the process of garnishment herein, at the time they paid the money on his checks after garnishment, then the plaintiff is entitled to recover." "You are further instructed that it is incumbent on the plaintiff to prove its case by a preponderance of the evidence."

Both were violated by the verdict, bringing it clearly within the exception to the general rule of the conclusiveness of verdicts as to the finding of facts. There was no evidence of any knowledge on the part of appellant's officers. The evidence intended to establish admissions was too vague and indeterminate to establish any fact whatever, even without the direct denial of appellant's cashier.

It is clearly established by the evidence that the answer to the process of garnishment was legally and technically correct; that the mistake originated with appellee; also that all money due W. G. Motley had been paid by appellant, previous to the interview by the officers of appellee with Clinton, the cashier of appellant, and the knowledge on his part that W. G. Motley was the party intended. Under the facts and circumstances established, it would be illegal and clearly inequitable to compel double payment from appellant, and, in effect, make it responsible for the error or mistake of appellee.

For the reasons given, the judgment will be reversed and the cause remanded.

*Reversed.*