Joe Hantman for use of Marie Larson, Appellee, v. West Side Trust & Savings Bank, Appellant.

Gen. No. 32,337.

Opinion filed June 19, 1928.   Rehearing denied July 2, 1928.

WEISSENBACH, HARTMAN, CRAIG & OKIN, for appellant.

JOHN F. VOIGT, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

In the municipal court of Chicago, the plaintiff, Joe Hantman, for the use of Marie Larson, in a trial before the court without a jury, obtained a finding and judgment against West Side Trust & Savings Bank, a corporation, garnishee defendant, in the sum of $501.48.   This appeal followed.

The following are all the material facts in the case: On April 18, 1913, in the municipal court of Chicago, Emil A. Oettinger recovered a judgment against Joe Hantman and Meyer Levine in the amount of $240.85. This judgment was assigned by Oettinger to Marie Larson on May 1, 1913.   On September 23, 1926, after the judgment had been revived, Marie Larson caused to be issued a garnishee summons against the West

374

Side Trust & Savings Bank et al. as garnishees. The writ—served on the bank on September 17, 1926—directed the garnishees to answer as to rights, credits, choses in action, effects, estate, property or money in their hands belonging to Joe Hantman. On October 4, 1926, the bank answered that it had no property, money, etc., in its hands belonging to Joe Hantman. Later, the plaintiff filed interrogatories to the garnishee and therein for the first time, so far as the record shows, reference is made to the principal defendant as "Joe Hantman, alias Joe Handman." As to certain interrogatories the bank answered that it made a real estate loan to one Jacob Roitman, July 23, 1926, in the amount of $50,000; that in connection with that loan the bank opened an account with Roitman on August 11, 1926, and credited the same with the said sum; that on September 16, 1926, the bank received an affidavit signed by Roitman and containing *(inter alia)* the following:

"The following is a true statement of the names of sub-contractors, and material men, the amounts of all contracts made and all money due and to become due and unpaid to material dealers, sub-contractors or workmen in the employ of the undersigned on or about above described building, * * * Name—H. Dubin; Amount of Contract, 18,000.00; Amount Due and to Become Due, 10,750.00 * * * United Iron Works; * * * H. Belofsky; * * * Belmont Stair Works; * * * United Glass; * * * J. Handman; Amount of Contract, 5,500.00; Amount Due and to Become Due, 3,500.00. * * * Barron & Shapiro; * * * Chas. W. Bussey; * * * H. Trofansky; * * * Kavansky Bros.; * * * Albany Park Tile Co.; * * * Public Light Co. * * *"

On September 28, 1926, Roitman signed an order, directed to the defendant bank, to "pay to Joe Handman Plastering Contractor Three Thousand & no/100

Dollars for Labor & Material and charge same to my loan account on building situated No. 1815 S. Ridgeway Ave. Chicago, Ill. * * * Balance due $500 00/100." On October 1, 1926, Joe Handman presented the order, together with waivers of liens of materials and labor, to the bank, and it thereupon issued its check for $3,000, payable to the order of Joe Handman, and this check, indorsed by Handman and deposited by him in the Liberty Trust & Savings Bank, was paid by the defendant bank, through the clearing house, on October 2, 1926. On October 16, 1926, Roitman issued a written order, directed to the defendant bank, to pay to J. Handman $500, and the bank issued a check for $500 payable to the order of "J. Handman," and this check, with the indorsement "Joe Handman," was deposited by the latter in the Liberty Trust & Savings Bank and was paid by the defendant bank, through the clearing house, on October 19, 1926. The bank charged both of these payments to the real estate loan account of Roitman on the dates of the respective checks. On October 1, 1926, and October 16, 1926, other subcontractors and material men presented similar orders from Roitman to the bank, and these were paid by the bank in the same manner as it paid Handman, and the respective amounts of the orders were charged to the real estate loan account of Roitman. The bank, in making real estate loans, required all applicants to give an affidavit such as was made by Roitman and it also required the production of waivers of liens on all building loans before payments were made thereon; "that when Waivers of Lien are tendered to the bank in connection with a real estate loan, the proceeds of the loan are paid to the maker; that frequently the Bank pays directly to sub-contractors and contractors for work performed and material furnished by them upon orders issued by the maker of the loan * * *; that unless Waivers of Liens are presented with said

orders, and upon inspection of the premises it is found that said work has been performed, and material furnished, payments thereof are not made.''

The defendant contends that under the pleadings in this case the burden was upon the plaintiff to prove that Joe Hantman, the principal defendant, and Joe Handman, subcontractor, to whom the bank paid the amounts in question, were one and the same person, and that the plaintiff failed in that regard. We will refer to this contention hereafter.

The defendant next contends that even if it be assumed that the defendant Joe Hantman and the subcontractor Joe Handman were one and the same person, nevertheless, at the time of the service of the writ of garnishment and up to the time of the filing of its answer, the bank did not have in its hands rights, credits, choses in action, effects, estate, property or money belonging to the principal defendant and that therefore a judgment could not properly be entered against it as garnishee, and it further contends that, regardless of the merits of the first and second contentions, the process in a garnishment action must designate with clearness and accuracy the name of the judgment debtor whose funds the plaintiff seeks to reach and that the plaintiff in the present proceeding failed in that regard, and that as the proof does not show that the bank had knowledge that the name of the principal defendant was not correctly given in the process or had reason to suppose that the garnishment proceedings were intended to be against its creditor, judgment could not be justly entered against it in the instant case.

We will pass upon the last contention first. In *German Nat. Bank of Denver v. National State Bank of Boulder,* 3 Colo. App. 17, 31 Pac. 122, it was held that a garnishee is unaffected by a notice served on him, wherein the middle initial of the person named is different from that of a person to whom he is indebted,

unless he is shown to have had actual knowledge that his creditor and the person named in the writ are the same, and in announcing this rule the court said: "It is not intended to so broadly declare this doctrine as to necessarily make it applicable to grants and contracts where the identity of the persons may be the subject-matter of easy proof, nor to cases of pleading which are susceptible of amendment without detriment to the rights and interests of third parties, but simply and solely to those writs and notices by which it is sought to hold third persons whose rights may be affected by the error, and whose situation has changed before they may have in any known legal way become charged with knowledge and notice of the identity of the individual described by the erroneous name. * * * Whether, if the evidence demonstrates that the holder of the fund is not misled by the error in the writ, and from the facts must know that he is indebted to the defendant in the suit, he may disregard the process and rely on a technical inaccuracy for his defense, is a question not clearly presented by the record, and it is therefore left undetermined." Later, this case came again before the same tribunal *(German Nat. Bank of Denver v. National State Bank of Boulder,* 5 Colo. App. 427, 39 Pac. 71), and the principle of law laid down in the former decision, was restated and approved, and the court further said: "In the intricate and complicated business of banking, absolute exactness and particularity in regard to names is absolutely indispensible, not only for the security of the bank, but of those doing business with it. * * * Banks cannot presume that John A. Smith and John W. Smith are the same person. Creditors are supposed to know the names of their debtors, especially when, as in this case, the indebtedness is evidenced by a promissory note, and in bringing suit should be held to bring the suit against the proper person, or suffer the penalty of their own negligence." In *Terry v.*

*Sisson,* 125 Mass. 560, it appears that a writ was made out against Sarah Sisson, and a savings bank summoned as trustee. The writ was served on Sarah F. Sisson, and was afterwards amended accordingly. After service of the writ, and before the amendment, the bank paid to Sarah F. Sisson funds in its possession, deposited by her. The court held that Sarah Sisson and Sarah F. Sisson were different names; that while the misnomer could not be taken advantage of by the principal defendant, and that, as between her and the plaintiff, it might be amended, at the discretion of the court, nevertheless, ''such an amendment cannot affect intervening rights of third persons. The only writ served upon the trustee was against Sarah Sisson. The trustee, having no funds belonging to any person of that name, and acting, so far as appears, in good faith and with no notice or knowledge that the person intended to be sued was Sarah F. Sisson, lawfully paid over to the latter the funds in its hands belonging to her, and cannot by the subsequent amendment of the writ be made liable to pay the same over again to the plaintiff.'' In *White v. Springfield Institution for Savings,* 134 Mass. 232, the question was whether the defendant, summoned as trustee in the original action, when it afterwards paid the deposits standing in the name of James Shay, knew or ought to have known that this depositor was the same person who was the principal defendant in the original action, and named in the writ James Shea, the trustee having deposits standing in each name but belonging to different persons. The court held that the question whether Shay and Shea were different names or only different ways of spelling the same name, was one of fact, and not of law, and that the burden was upon the plaintiff to prove that the trustee should be charged, and that the further question whether the trustee should have known or supposed that James Shay, whose deposit he paid, was the

defendant in the original suit, was also a question of fact; that the presiding justice had found the facts in favor of the defendant, and the exceptions of the plaintiff were overruled. In *Citizens' Savings Bank v. Boswell*, 127 Ky. 21, 104 S. W. 1014, where a garnishee, in an action against it, relied on a misnomer in the name of the principal defendant in the garnishee summons, but where the evidence showed it was not misled by the misnomer, a judgment against the garnishee was sustained. Other cases to the same effect might be cited. The *nisi prius* case of *Paul v. Johnson,* 9 Phila. 32, is cited in several of the textbooks as an authority contrary to *German Nat. Bank v. National State Bank of Boulder, supra,* and *Terry v. Sisson, supra,* but an examination of that case shows that the sole contention of the garnishee was "that they were, by the misnomer of the defendant, relieved from responsibility for having paid the debt after the service of the attachment," and moreover, the conduct of the garnishee in drawing a check to the order of their cashier, and having him indorse the same to the order of their creditor, the principal defendant, was clear evidence that the garnishees were not acting in good faith and were not misled by the misnomer in the writ.

"A writ or summons must state correctly the christian, middle name, and surname of the principal defendant, and where the writ fails in this respect the garnishee is totally unaffected by the service of the writ upon him, and cannot be charged if he subsequently pays the debt or delivers the property to the principal defendant, without actual knowledge of the identity of the principal defendant and the party named in the writ." (20 Cyc. 1046.) After a careful consideration of many of the authorities bearing on the subject, we have reached the conclusion that the following is a correct statement of the law applicable to the present contention: A writ or summons in gar-

nishment must contain an accurate description as to the name of the principal defendant or person to whom the garnishee is indebted, but "the garnishee becomes liable to hold the property subject to the process where he has actual knowledge of the identity of the principal defendant, though the latter's name is not correctly given, or has reason to suppose the proceedings are intended to be against his creditor." (28 C. J. 220, 221.)

The plaintiff contends that "the names 'Joe Hantman' and 'Joe Handman' are *idem sonans*," and that therefore the judgment against the garnishee should be sustained, and in support of this contention it cites six cases, none of which is a garnishment proceeding or an action akin to it. If the rule contended for by the plaintiff were the law, it would be dangerous for an institution like the present garnishee to do business. To illustrate: In *Kriste v. International Sav. & Exch. Bank,* 17 Cal. App. 301, 119 Pac. 666 (cited by the plaintiff), it was held that the surnames "Christe" and "Prkachin" as defendants against whom judgment was entered in a justice court are *idem sonans* with the surnames "Kriste" and "Perkacin" in an action in which the justice's judgment is pleaded as a defense. It seems very plain to us that such a ruling would be a harsh doctrine to apply in garnishee proceedings, especially in a case where the garnishee is an institution like a bank. In our opinion it may be stated as a correct rule of law that the doctrine of *idem sonans* cannot be invoked in a case where a garnishee, acting honestly and without knowledge of the identity of the principal defendant, and having no reason to suppose that the garnishee proceedings are intended to be against his creditor, has been misled by the variant spelling. The circumstance of the similarity in the sound of the names may be considered, together with all the other facts in the case, in determining whether the plaintiff has made

out a case against the garnishee, but the mere fact that the two names are similar in sound, of itself alone, is not sufficient to make out a prima facie case against a garnishee in a proceeding like the present one.

In the instant case it is not disputed that the writ did not designate with accuracy and clearness the person to whom the garnishee was indebted, and the plaintiff had the burden of proving that the garnishee had actual knowledge of the identity of the principal defendant, or had reason to suppose that the garnishee proceedings were intended to be against its creditor. In our judgment, plaintiff had failed in this regard. The burden was upon the beneficial plaintiff to show that the garnishee acted in bad faith *(Wilhelmi v. Haffner,* 52 Ill. 222; *Hennessey Bros. Co. v. St. Mary's Academy,* 171 Ill. App. 470, 472), and there is not a scintilla of evidence in the case tending to show that the defendant bank so acted, nor is there any proof that the garnishee had actual knowledge of the identity of the principal defendant, nor are there sufficient facts and circumstances to warrant a finding that the defendant bank had reason to suppose that the garnishee proceedings were intended to be against Joe Handman, the subcontractor. The proof does not show that Joe Handman, or Joe Hantman, was a depositor with the bank or had any account with it, or that the bank was actually acquainted with an individual bearing either name. The bank, in the transactions, was dealing directly with a client and depositor, Roitman, and only incidentally with Joe Handman. It was not until November 3, 1926, when the plaintiff filed the written interrogatories that the alias name, Joe Handman, first appeared, and at that time the bank had already made the payments in question. There is nothing in the evidence to show that the plaintiff, prior to the time of the payments, made any effort to bring home to the knowledge of the

bank officials the fact that she claimed that Joe Hand-
man, subcontractor, was the one sought to be reached
by the process. "Where a person opens a bank
account under a fictitious name, and the process is
sued out in the real name, the identity should be estab-
lished to the officers of the bank when it is sought to
reach the fund." *(German Nat. Bank v. National
State Bank of Boulder, supra,* 39 Pac. 71, 72.) In
such a case an accurate description of the individual
whose funds are sought should run with the writ.
(Ibid. 72.) These principles of law apply to the in-
stant case.

As to the contention of the defendant that under
the pleadings in this case the burden was upon the
plaintiff to prove that Joe Hantman, against whom the
original judgment was obtained, and Joe Handman,
subcontractor, to whom the bank paid the amounts in
question, were one and the same person, and that the
plaintiff failed in that regard, we would say that after
a thorough examination of the record we have reached
the conclusion that this contention is a meritorious
one. There is no evidence in the case that tends to
prove that Joe Hantman, the principal defendant in
the instant proceeding, and Joe Handman, the person
to whom the bank paid the amounts in question, were
one and the same person, and under the pleadings the
burden was upon the beneficial plaintiff to prove such
fact by proper evidence. There is no presumption of
liability upon the part of the garnishee, and it must
be made affirmatively to appear. The plaintiff an-
swers the instant contention as follows: "It (the de-
fendant bank) now seeks to disclaim responsibility by
alleging that Joe Handman and Joe Hantman are not
one and the same person. But this is no defense. The
names Joe Handman and Joe Hantman are *idem
sonans.*" This argument has no weight. The mere
fact that the names Joe Handman and Joe Hantman
are *idem sonans* does not prove that Joe Handman

and Joe Hantman are one and the same person. The plaintiff, therefore, failed to make out a prima facie case against the garnishee defendant.

We do not deem it necessary to pass upon the other contention of the defendant bank.

For the reasons stated the judgment of the municipal court of Chicago is reversed.

*Reversed.*

BARNES, P. J., and GRIDLEY, J., concur.