R. & M. Tire Service Co., Inc., *v.* Deposit Guaranty Bank & Trust Co.

(Division A. March 18, 1935.)

[160 So. 274. No. 31624.]

J. Morgan Stevens, Harry M. Bryan, and J. M. Stevens, Jr., all of Jackson, for appellant.

Ricketts & Ricketts and Shaw & Pilgrim, all of Jackson, for appellee.

Argued orally by **Harry M. Bryan,** for appellant, and by **M. A. Pilgrim,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

On August 30, 1933, the R. & M. Tire Service Company, Inc., sued out a writ of attachment against J. S. Williams and a written suggestion of garnishment was filed with an affidavit wherein certain banks and corporations were named as garnishees, among which was the appellee, the Deposit Guaranty Bank & Trust Company. The affidavit, bond, and writ described the principal debtor as ''J. S. Williams.'' The writ commanded that the appellee, with others, be served as a garnishee.

Early in the morning on August 31, 1933, before business hours, one Hale, a deputy sheriff, served a writ of attachment and garnishment upon Swann, cashier of the

Deposit Guaranty Bank & Trust Company, who turned it over to Mounger, a trust officer of the bank intrusted with the duty of handling garnishment writs. It was the custom of this officer, when he found on the books of the bank that it owed such a debtor, to make a red mark by the name, and that was notice to all its officers and employees to withhold payment of the money due to a debtor. Mounger found that the bank had fifty-three depositors by the surname of "Williams," six of whom had "J" as one of their initials. It was the custom of the appellee bank to arrange the initials alphabetically. He found no "J. S. Williams" on the books of the bank, and therefore did not place opposite any name a symbol indicating that the money should be withheld.

On August 30, 1933, "S. J. Williams" presented to a teller of the appellee bank a cashier's check of a Meridian bank, the signature on which was known by the officials of the appellee bank to be genuine. They therefore gave S. J. Williams credit on their books for the amount of the check, less cost of exchange, which was in excess of one thousand three hundred dollars. The account was entered on the books in the name of "S. J. Williams, 450 W. Cap. St., care of Montgomery Ward & Co., Jackson, Miss.," and this entry appeared upon the ledger of the bank. On August 31, 1933, subsequent to the service of the attachment and garnishment writ upon it, the bank paid "S. J. Williams" the full amount due him. At the time of payment there was some discussion among the bank officials as to whether there was a garnishment against "S. J. Williams," and it was decided that there was not; the initials being different from those on the writ.

The deputy sheriff, Hale, testified that, at the time he served the writ upon the bank's cashier he said: "They don't know whether his name is 'Jack' or 'S. J. Williams,' but it is one and the same one. . . . I told him that I had served it on Montgomery Ward, and that Mr.

Williams was working down there." It is clear that he, at that time, did not remember whether he said "J. S." or "S. J.," as the initials of Williams. He had before him the amended writ, and was evidently confused thereby as to the initials. He said he gave this information to Swann at the direction of counsel for the attaching creditor. On cross-examination, Hale's evidence indicated that the first person on whom he served this writ was the appellee bank. One of the tellers of the bank knew the "Williams" who made and withdrew the deposit.

Upon these facts the bank answered the garnishment writ in statutory form that it was not indebted to "J. S. Williams," and the appellant, at a term of court subsequent to the service of the writ, was permitted to amend the writ and all pleadings so as to name the debtor defendant as "S. J. Williams."

In the contest of the answer to the garnishment writ, it is repeatedly alleged that the bank actually knew that S. J. Williams was the party intended to be named as debtor defendant. The officials of the bank testified that they had no knowledge as to the identity of the person. Swann testified that he did not recall the conversation with Hale, but would not deny it if Hale said so.

The case was tried before the circuit judge without the intervention of a jury, who denied the contest, and dismissed the garnishment as to the appellee bank, and from that judgment appeal is prosecuted here.

We are of the opinion that the circuit judge was well warranted in holding that the bank had no actual knowledge of the real identity of the debtor or that a mistake had been made by the attaching creditor in the transposition of the initials.

However, it is contended by the appellant that notice as given by Hale to Swann, an officer of the bank, was sufficient to put it upon inquiry, and that such inquiry would have led the bank to the knowledge that "Williams," the debtor defendant, was employed by Mont-

gomery Ward Company, and that he was known as "Jack."

Ordinarily and generally, when a garnishee is served with a writ issued in pursuance of the statute, it is required to answer as at the time of service, giving the amount it owes the debtor defendant at that moment, and from that time is held accountable to the court for the disposition of that fund.

We think, under all the facts and circumstances here revealed, that the appellee bank was not required to make inquiry one by one of its fifty-three depositors named "Williams," or of its six depositors having "J" as one of their initials, and we do not think the bank would have been warranted in regarding the unofficial statement of the deputy sheriff, Hale, which was not in accordance with the mandate of the writ served upon it. The bank was primarily controlled by that writ and by the description of the person sought to be held as a debtor as given in the writ. To hold otherwise would require a bank to perform duties which should be performed by the attaching creditors. A creditor is supposed to know his debtors, and, if uncertain, he has the means of obtaining information which are not available to banks under the restrictions and duties resting upon them. A bank is prohibited, in this state, from revealing the name of any depositor, or the amount due him, and a violation of the statute, sec. 3774, Code of 1930, is a misdemeanor. A bank is also required to honor a check of a depositor having that amount of money on deposit, and refusal to pay, under such circumstances, is at the bank's peril.

In the case at bar, more emphasis is placed upon the message of the officer serving the writ than upon the writ itself. There was nothing to prevent the creditor from writing in the writ any means of identification of its debtor available to it, and by that method render certain that which was evidently uncertain.

Now, if the bank had known that "S. J. Williams" was the man intended, of course, a payment of the money subsequent to the service of the writ would not have discharged it. But, under the circumstances of this case, we do not believe there was any duty upon the bank to make an independent investigation on behalf of the attaching creditor.

The appellant, on its theory that it was the duty of the bank to make inquiry or an investigation, cites Nebhut v. Fourth National Bank, 22 Ala. App. 447, 116 So. 708, 709; 28 C. J. 296; Central of Georgia R. Co. v. Napier, 19 Ga. App. 483, 91 S. E. 1004; White v. Springfield Sav. Inst., 134 Mass. 232; and Citizens' Sav. Bank v. Boswell, 127 Ky. 21, 104 S. W. 1014.

We have carefully examined these cases and find that it may be adduced therefrom that, under certain circumstances, a bank having knowledge is required to pursue, by investigation, that which it already knows, to the ascertainment of the identity of a person where a mistake had been made in the spelling of a name, or in the initials. The strongest statement is in the Alabama case, supra, wherein it is said that: "The authorities even go further and hold that the garnishee would be liable if he had reason to suppose the proceedings are intended to be against his creditor." There the garnishment debtor was named as the Hall Beale Cotton Company, and the word "Incorporated" was omitted. The bank was administering its affairs, and had participated in its organization, and knew it was incorporated.

In the Central of Georgia Case, supra, there was a garnishment against a railroad, and the rule was announced therein without reasons for its application to the particular facts.

In the case of White v. Springfield Sav. Inst., supra, a bank had deposits in the names of James Shay and James Shea. The question as to whether Shay and Shea are different names, and whether the garnishee ought

to have known which was intended, was held by the Massachusetts court to be a question of fact.

In the case of Terry v. Sisson, 125 Mass. 560, the court held that, where a writ was served on Sarah Sisson, and the person intended to be sued was Sarah F. Sisson, and a trustee lawfully paid over to the latter funds belonging to her, he cannot be made liable to pay same over again.

We prefer to adopt the language of the court in the case of German National Bank v. National State Bank, 5 Colo. App. 427, 39 P. 71, 72, wherein the writ described the person as "W. J. M.," and the court held that such a writ was ineffective to reach money due "W. G. M.;" the court saying that: "In the intricate and complicated business of banking, absolute exactness and particularity in regard to names is absolutely indispensable, not only for the security of the bank, but of those doing business with it. . . . Banks cannot presume that John A. Smith and John W. Smith are the same person. Creditors are supposed to know the names of their debtors."

See, also, the cases of Hantman v. West Side Trust & Sav. Bank, 249 Ill. App. 372; Kunde v. Prentice, 329 Ill. 82, 160 N. E. 193; Michie Banks & Banking, vol. 5, p. 112, sec. 51; King v. McElroy, 25 R. I. 222, 55 A. 638. In the latter case the writ named "John Hancock Life Insurance Company" as a debtor, and the court held that the writ did not bind funds due the "John Hancock Mutual Life Insurance Company."

Affirmed.